McClure et al. v. City of Natchez.*

(Division A. May 4, 1925.)

[103 So. 813. No. 24851.]

1. MUNICIPAL CORPORATIONS. *Amendment of charter, before presentation to Governor, to be set out in hæc verba on minutes.*

An amendment to a city charter, before being presented to the Governor, should be set out on the minutes of the mayor and board of aldermen *in hæc verba*.

2. MUNICIPAL CORPORATIONS. *Amendment of charter ineffectual till recorded on minutes.*

Amendment to city charter, providing that after certain things, including being recorded on the minutes of mayor and board of aldermen, it shall go into effect, is ineffective till this is done.

3. MUNICIPAL CORPORATIONS. *No retroactive effect to amendment of charter.*

Retroactive effect cannot be given to an amendment to a city charter, authorizing issuance of bonds for a ferry, so as to validate a bond issue, by the recording of the amendment on the minutes of the mayor and board of aldermen, necessary to make the amendment effective, after the bonds had been ordered issued.

4. MUNICIPAL CORPORATIONS. *No implied authority to issue bonds from authority to own and operate ferry.*

From any power given a city by its charter merely to own and operate a ferry, authority to issue bonds therefor cannot be implied, but such power must be expressly granted.

---

*Headnotes 1. Municipal Corporations, 28 Cyc., p. 243; 2. Municipal Corporations, 28 Cyc., p. 243; 3. Municipal Corporations, 28 Cyc., p. 246; 4 Municipal Corporations, 28 Cyc., p. 1575.

APPEAL from chancery court of Adams county.
HON. R. W. CUTRER, Chancellor.

Proceeding by the city of Natchez to validate bonds, opposed by James McClure and others. From a decree of validation, McClure and others appeal. Reversed and judgment rendered.

*Ratcliff & Kennedy,* for appellant.

The city of Natchez is a municipal corporation under and by virtue of a legislative act of January 20, 1877. It is subject to amendment, not by the legislature but according to the terms of section 3444, Code of 1906. The constitution of 1890 provides that there shall be general laws as to the method of amendments of city charters.

If the city of Natchez had power or authority to issue the bonds in question, that power must be found in the city charter or the amendments thereto. *Hazlehurst* v. *Mayes,* 51 So. 890. We submit to the court that there is not a single word in the charter granting or even implying the power or authority to issue bonds, but the city contends that this language of the charter, giving the right to lease and reserve the rent, implies the right to own and the right to own implies the right to issue bonds to buy. So thus, the city is indulging in two implications when the law denies even one. However, the above language of the city charter was enacted in 1877 and unquestionably had in mind the matter of ferry service across the Mississippi River and not a ferryboat. In those days it was understood that the state or city might charge a license fee for the privilege of operating a ferry or might operate the same by contract and charge a rent for the privilege.

It has been definitely decided that the city would have no right whatever to lease, license or grant any right to engage in the ferry service because such is violative of the Federal Constitution. Counsel for the city has heretofore contended that this charter clause referred to the right to operate a ferry across the Mississippi River —that under that clause of the charter the city might grant a franchise to one ferryman and make that franchise exclusive. We submit that the language evidently had reference to the service and not to a ferryboat because the city of Natchez, at that time nor since, has never had a ferryboat which it could lease out and reserve the rent therefor. Therefore, if the language had

reference to the services to be performed by someone other than the city of Natchez, that same language could not be construed, even by implication, so as to give to the city of Natchez the right to own or operate a ferry-boat, much less authority to issue bonds to buy.

The city, in the lower court, based much of its contention upon the case of *Marshall* v. *Grimes,* 41 Miss. 27; *Black* v. *McCarthy,* 56 Miss. 654, both of which were decided before the constitutional provision as to any local act by the legislature granting the right to have a ferry-boat and also before the decision of the United States supreme court in the case of *Helena Ferry Co.* v. *State,* 56 So. 362.

We now pass to the charter amendment initiated on the 11th day of September, 1923. The proposed amendment was initiated on the 11th day of September, 1923, by the way of an alleged ordinance and the only thing on the minutes of that date is under the title: "In the matter of ferry service." Neither the title of the ordinance, a single section thereof, nor a reference to its purposes were placed on the minutes.

The proposed amendment authorizing municipal ownership and the issuance of bonds was not passed in accordance with section 3444, Code of 1906, which provides that a municipality desiring to amend its charter may prepare in writing the desired amendment or amendments and after publication for three weeks, shall be submitted to the governor, etc., and thereafter be recorded. This direct question was passed upon by the supreme court of Mississippi in *Williams* v. *Vicksburg,* 116 Miss. 79, 76 So. 838.

In *Sick* v. *Bay St. Louis,* 74 So. 272, decided before the Williams case, this court had occasion to pass upon the validity of an amendment to an independent charter municipality. However, it merely held that the municipality need not re-adopt and place upon their minutes the charter amendment after its approval by the governor.

If a board may order an ordinance recorded *nunc pro tund* and make all of their proceedings in the meantime

valid, it necessarily follows that recording is never necessary, because when the ordinance and resolutions are attacked, the board may then cure all errors by ordering recorded *nunc pro tunc.* This precise question was disposed of by this court in *Board of Supervisors* v. *Parks,* 96 So. 466, wherein this court held that an order. of the board of supervisors, entered as of a previous date, was beyond the power of the board. The proposed charter amendment and the purpose thereof and the issuance of the bonds is violative of chapter 147 of the Laws of 1914, section 5968, Hemingway's Code, and chapter 206 of the Laws of 1920.

Section 3415, Code of 1906, enumerates the purposes for which municipalities may issue bonds. This section did not apply to special charter towns and therefore not to Natchez. In 1914 and by chapter 147, which is now section 5968, Hemingway's Code, the legislature amended section 3415 of the Code of 1906, and made it apply to all municipalities in the state, whether under code chapter or under special charter. Section 3415 of the Code of 1906, and its re-enactment and amendment found at section 5968 of Hemingway's Code, enumerates the eighteen purposes for which code chapter and special charter towns may issue bonds. The question that arises is whether the city of Natchez, being a special charter town, is limited to the purposes for which it may issue bonds by a state law. Section 5968, Hemingway's Code, of necessity, would have the same construction as to its purposes and limitations as section 3415 of the Code of 1906, of which it is an amendment. Section 3415 of the Code of 1906, was construed in *Hazlehurst* v. *Mayes,* 51 So. 891, wherein this court held that the section limited the power of the municipality in the issuance of bonds to the purposes therein enumerated and that the town could not issue bonds for purposes not named in the section. Section 5968, which is the amendment of section 3415 of the Code of 1906, differs only in that a few more purposes have been enumerated and the section applies to all municipalities. The principle, therefore, announced

in the Hazlehurst case must be again followed ·and to the effect that the section enumerating the purposes for which a special charter town may issue bonds limits the power of the municipality to those enumerated: The purpose of buying a ferryboat and equipment is not one of the purposes enumerated in section 5968 of Hemingway's Code, and therefore the city is without authority.

*L. A. Whittington,* for appellee.

The first objection is based upon the failure of the mayor and aldermen of the city of Natchez at the time the said proposed amendment was initiated and adopted to incorporate and spread same at large upon the minutes of the mayor and aldermen.

By reference to section 6004, Hemingway's Code, see the method and requirement prescribed for the amendment of the charter of a municipality. We submit that the ordinance book was a record book of the mayor and aldermen of the city of Natchez, and that when said amendment was recorded by the clerk, after its approval by the Governor and attorney-general, and after its recordation in the office of the secretary of state, in the ordinance book of the city of Natchez, it was "recorded among the records of the mayor and aldermen of the city of· Natchez," as required by section 6004, Hemingway's Code.

Therefore, the only question that may arise is not the question of whether said amendment was recorded among the records of the mayor and aldermen as required by said section, but rather whether or not said amendment was adopted by the mayor and aldermen, or whether the same was ever properly initiated. The contention of the objectors herein is in effect that the mayor and aldermen were required to adopt said amendment and that the only manner in which said amendment might be properly adopted was by spreading the same at large upon the minutes of the board at the time of adoption; it is perfectly manifest that the recordation of this

amendment referred to in section 6004, is the recordation thereof after the same had been published, submitted to the governor and recorded in the office of the secretary of state, so that the failure to spread the same at large upon the minutes of the mayor and aldermen at the time of its adoption has nothing to do in point of compliance with the provisions of section 6004, but is a question relating solely to the initiation of said amendment or its adoption.

We respectfully submit to this court touching this question that the only statutory requirement was that it should be "prepared in writing by the mayor and board of aldermen and published for three weeks, and then submitted to the governor." We insist that the record in this case shows that said amendment was prepared in writing, was signed by the mayor and attested by the clerk, and that the same appears on the minutes of the board to have been adopted and that the minutes show that such adoption was sufficient to identify the ordinance in question, or the amendment in question.

We submit to the court that, under the provisions of the statute providing for amendments to city charters, it was not necessary to enter said ordinance and spread the same at large upon the minutes of the board, at the time of its adoption; but that when same was prepared in writing and when the minutes of the board show that it was adopted by the mayor and board of aldermen, there was a full initiation of the proposed amendment. The notice to the public of such amendment is taken care of in the provision of section 6004, which requires that said amendment shall be published for three weeks. The record in this case shows that this was done; there can be no question that the proposed amendment was prepared in writing, published for three weeks and thereafter submitted to the governor; that the attorney-general approved same; that it was recorded by the secretary of state in his office, and thereafter recorded in the records of the mayor and board of aldermen;—all of these

essential and necessary steps were fully observed and complied with.

The question here contended about is solely the question of the proof of the adoption of the amendment or ordinance, and in answer to this question we submit to the court that on the trial of this case the original amendment or ordinance initiating the amendment to the charter would be sufficient proof of its adoption. The fact that the ordinance appears of record in the ordinance book of the city of Natchez is sufficient proof of the validity of the adoption of that ordinance. *Rutherford v. Swink,* 16 S. W. 76.; Ency. of Evidence, page 817-2A-B Division, and page 821 (B).

It is perfectly manifest that in the Williams case this court decided that said amendment had not been recorded as provided in section 6004 of the Statutes of Mississippi, and that the recordation therein considered was the recordation referred to in said statute, namely, the recordation thereof after the same had been prepared in writing, published, approved by the governor and attorney-general and recorded in the office of the secretary of state.

In the instant case, we submit that the recordation contemplated by the statute has been made because the statute clearly provides for recordation after the same has been approved by the governor and attorney-general and recorded in the office of the secretary of state. So that it is wholly manifest that the failure to spread the same upon the minutes at the time of its original initiation by the mayor and aldermen cannot be brought into question as a matter of compliance with the statute.

We refer the court to *Sick, et al.* v. *Bay St. Louis,* 113 Miss. 176. In that case, this court held that the recordation of the amendment in the ordinance book was sufficient compliance with the statute and that case is directly in point and is decisive of the questions here discussed. But it is the contention of counsel for the appellant herein, that the city of Natchez could not avail itself of the provisions of section 6004 for the purpose of

having delegated to it authority to issue bonds to build a ferryboat, for the reason that chapter 147 of the Laws of 1914, prescribes the purposes for which municipalities might issue bonds, and that such prescription was a limitation upon the powers of municipalities, whether operating under a special charter or not, for the issuance of bonds.

We submit that chapter 147, Laws 1914, in effect was practically repealed by chapter 206, Laws 1920. In *Love v. Holmes,* 91 Miss. 535, it was held that under section 6004, a municipality, operating under a special charter, could amend its charter so as to authorize it to issue bonds for purposes not then provided for by its charter. We submit to the court that it is manifest that when a city amends its charter so as to provide for the issuance of bonds for purposes not then provided for by its charter, that when such bonds were issued under the amendment to its charter, as provided by section 6004, it may certainly be said that said bonds were issued for a purpose, "authorized under the laws of the state." To hold to the contrary, would be to hold that the amendment of a charter and the granting of additional power to a city by virtue of such amendment was not authorized under the laws of the state.

Even though it might be conceded that the Act of 1920 chapter 206, limited the purposes for which bonds might be issued, to such bonds as were in the purview and provisions of the original charter then existing, yet, under the provisions of the original charter of the city of Natchez, as they existed in 1920, the city of Natchez was authorized to build a ferry boat and to provide for fully equipping a ferryboat, under the general grant of authority in its charter.

The term "lease" as used in the original charter grant was a term of broad effect, and much broader effect than the term "license;" that the very term itself and the very grant of power with respect to ferries implies ownership, and right of ownership, including the power to own and the power to build, construct and establish all ferries.

Moreover, it is submitted to the court that the term "ferry" has reference not only to a landing place, but embraces all adjuncts of a ferry and all means of a ferry, and includes all boats, docks, equipment, as well as service rendered in the transportation of persons, commodities, and things across a body of water.

It has been repeatedly held by this court that under the provisions of section 6004, a city may amend its charter so as to afford necessary power and authority for purposes not provided for in its original charter, nor contemplated by its charter provisions.

Argued orally by *L. T. Kennedy,* for appellant.

McGowen, J., delivered the opinion of the court.

On September 11, 1923, the mayor and board of aldermen of the city of Natchez, appellees here, desiring to amend its charter to the end that bonds might be issued for the purpose of purchasing a ferryboat and equipment in order to operate a ferryboat across the Mississippi river from Natchez, Miss., to Vidalia, La., passed the proposed amendment, though not setting out the proposed amendment *in hæc verba,* and the only reference to which on the minutes of the mayor and the board of aldermen is in these words:

"In the matter of the ferry service across the Mississippi river, between the city of Natchez and town of Vidalia: Alderman De Marco, seconded by Alderman Wiggins, introduced a proposed amendment to the charter of the city of Natchez. This proposed amendment was, after some discussion, offered for passage as an ordinance. It was thereupon read, read the second time by its title, and then read to the members present. The proposed amendment was then signed by the mayor and attested by the city clerk, and the clerk was directed to hand the amendment to be printed for publication once each week for three consecutive weeks in the Daily Democrat."

It is unnecessary to set out the charter amendment in full. It is sufficient to say that it undertook to authorize the city to purchase ferry equipment and landing places in Natchez, Miss., and Vidalia, La., and to issue bonds therefor, and we shall only quote section 6 of said amendment because it is vital to a decision of this cause. Section 6 reads as follows:

"Be it further ordained, that this amendment to the charter of the city of Natchez shall be published for three consecutive weeks in the newspaper constituting the official organ of said city and that after it shall have been so published, approved by the governor, and recorded in the office of the secretary of state *and recorded upon the minutes of the mayor and board of aldermen* of the city of Natchez it shall go into effect as an amendment to the charter of the city of Natchez, and have the force and effect of law. Ordained this the 11th day of September, 1923." (Italics ours.)

After this action of the mayor and board of aldermen, the proposed charter amendment was in turn passed upon by the attorney-general and governor, after publication in a newspaper, and returned to the clerk of the city of Natchez, who on October 26, 1923, recorded the proposed charter amendment in the *ordinance book*.

Thereafter the city of Natchez, under its ordinances and under the charter as amended, proceeded to have an election held to authorize the issuance of seventy-five thousand dollars of bonds of the city of Natchez for the above-named ferryboat purposes, and the election was held, resulting in an overwhelming majority favoring the proposed bond issue.

It was contended by the city that there existed under its original charter the power to build a ferryboat and to provide for equipping same under the general grant of authority, to-wit: "To lease and regulate all ferries within the limits of the city of Natchez and to receive the rents therefrom for a period not exceeding ten years."

The amendment to the charter was not recorded on the minutes of the mayor and board of aldermen of the city of Natchez until May 14, 1924, on which day the board submitted the transcript of the record of the bond issue complete to the state bond attorney for his approval. Having secured the approval of the bond attorney, the necessary steps were taken to have the chancery court validate the bonds. On the day fixed for the hearing, McClure and others filed their objections, which were overruled by the court, and the bonds were validated. From the decree of the court validating the bond issue, appeal was prosecuted to this court by McClure and others.

The objections urged by those opposed to the bond issue were as follows: (1) That the proposed ordinance amending the charter should have been set out on the minutes of the board of mayor and aldermen before its submission to the governor and attorney-general for approval; (2) that the amendment to the charter itself provided, by section 6 thereof, that, after its recordation in the office of the secretary of state and recordation upon the minutes of the board of mayor and aldermen, it shall go into effect as an amendment to the charter, etc., and have the force and effect of law; that, the city having failed to enter the proposed amendment to the charter on the minutes of the mayor and board of aldermen, the subsequent proceedings in the issuance of the seventy-five thousand dollars of bonds were void; (3) that no power to issue bonds was granted to the city of Natchez for ferryboat purposes under its original charter; (4) that the city of Natchez could not amend its charter so as to issue bonds for the purpose of purchasing ferryboats, landings, and equipment, because the legislature, by chapter 147, Laws of 1914, made applicable to all municipalities section 3415, Code of 1906, as to the purposes for which bonds could be issued by municipalities, and therefore that the city of Natchez could not amend its charter so as to issue bonds for purposes not named in the general law; the purchase of ferryboats and the operation of

same not being so granted under the Laws of 1914, chapter 147.

Upon this question of the amendment of the charter it seems to be clearly settled that this court has held that before presentation to the Governor it is necessary for the mayor and board of aldermen to set out on its minutes *in hæc verba* the proposed amendment, and that proceedings under such an amendment, not so entered on the minutes, although approved by the governor and attorney-general and recorded in the office of the secretary of state, do not bind those affected thereby. *Sick* v. *City of Bay St. Louis,* 113 Miss. 175, 74 So. 272; *Williams* v. *City of Vicksburg,* 116 Miss. 79, 76 So. 838. These cases clearly apply, but the point made that the amendment to the charter itself provided that it should go into effect upon its recordation upon the minutes of the mayor and board of aldermen sets the question at rest that the amendment was not complied with until after all the proceedings in this bond issue had been taken, even including the last requisite order.

We cannot approve a bond issue based upon a charter amendment which had not been entered prior to the proceedings incident to the bond issue; nor can we approve that theory that a retroactive effect can be given so as to make this bond issue valid by the order entered on May 14, 1924, after the bonds had been ordered issued. The charter is organic and fundamental. The mayor and board of aldermen cannot prepare any ordinance or resolution in writing except as a unit, and can only speak in the matter of amending the charter by what is shown on its records, to-wit, the minutes of the mayor and board of aldermen. For the reason that the proposed amendment was not entered in writing upon the minutes of the mayor and board of aldermen before the necessary steps towards the issuance of the bonds was adopted, which bond issue depended upon said amendment, we think that the subsequent proceedings based thereon were void.

But it is contended that the language of the original charter, authorizing the city of Natchez to lease and reg-

ulate all ferries within its limits, implies the power to own and further implies the power to issue bonds to raise the money to purchase and to operate a ferry. We do not pass upon the question of whether this section authorizes the city of Natchez to own and operate a ferryboat line, but, conceding that this power existed, we cannot approve the suggestion that there is implied power to issue bonds, unless the grant of power to do so is in express terms.

In *City of Hazlehurst* v. *Mayes,* 96 Miss. 656, 51 So. 890, speaking of implied powers to issue bonds, where the city of Hazlehurst desired to issue bonds with which to acquire a park, there being no question of the right of the city to own a park, this court said:

"It is an elementary principle of law that as such it has no powers except those delegated to it by the state. It is equally well established that its powers are to be construed most strongly against a right claimed by it and not clearly given by the statutes. The officers of a municipality are not the agents of the people. They are merely officers elected to perform certain municipal or local governmental duties defined by the statutes of the state. These duties cannot be extended by mere implication to grave and important acts not authorized by law. Nothing but legislative grant can do this. When there is any doubt as to whether or not a municipality has the power to do or not to do a certain thing, this doubt must be resolved against its charter powers, unless it is plainly manifest that the power is conferred on the municipality to act."

So in the instant case it is clear that no power to issue bonds is expressed in the original charter, and we are therefore compelled to hold that neither by the charter nor by the proposed amendment thereto, as detailed *supra,* was the power given to the city of Natchez to issue bonds for ferryboat purposes.

It is further contended, by the objectors to this bond issue, that the city of Natchez, by virtue of the Laws of 1914, chapter 147, and the amendments thereto, is limited

in the matter of issuing bonds to the powers conferred by the legislature under said law, and that it may not amend its charter in conflict therewith. This raises a very serious and grave question, which, in view of the opinion expressed above, we do not deem necessary to decide at this time, having already held that the bond issue involved herein is void.

The decree of the court below validating the bond issue is reversed, and judgment here for appellant.

*Reversed.*